1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  | PAUL HARNER, an individual, | Case No.:  3:18-cv-01993-LL-MDD |

12                    Plaintiff, | **ORDER:** |

13  | v. | **(1) GRANTING DEFENDANT'S** |

14  | USAA GENERAL INDEMNITY | **MOTIONS IN LIMINE NOS. 1, 2,** |
    | COMPANY, a Texas Corporation; DOES | **5, AND 6 AND GRANTING-IN-** |

15  | 1 through 50, | **PART MOTION IN LIMINE** |
    | | **NOS. 3 AND 4** |

16                     Defendant. |

17  | | **(2)  GRANTING PLAINTIFF'S** |

18  | | **MOTION IN LIMINE NO. 1** |
    | | **AND GRANTING-IN-PART** |

19  | | **PLAINTIFF'S MOTION IN** |
    | | **LIMINE NOS. 2 AND 3** |

20

21  | | **[ECF Nos. 43, 52, 53, 54, 56, 57]** |

22  **I.     INTRODUCTION**

23          Plaintiff PAUL HARNER ("Plaintiff") brings this bad faith action arising out of a

24  coverage dispute against DEFENDANT USAA GENERAL INDEMNITY COMPANY,

25  a Texas corporation ("Defendant") and Does 1 through 50.[1]  ECF No. 1.  Before the Court

26  _____

27  [1]     The Federal Rules of Civil Procedure ("FRCP") neither authorize nor prohibit the
    use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of

28  all parties in his complaint. *See Rojas v. Sea World Parks & Ent., Inc.*, 538 F. Supp. 3d

are (1) Defendant's Motions in Limine Nos. 1 through 6, ECF No. 43, and (2) Plaintiff's Motions in Limine Nos. 1 through 3, ECF Nos. 52, 53, 54.  After considering the papers submitted, supporting documentation, and applicable law, the Court (1) **GRANTS** Defendant's motions in limine nos. 1, 2, 5, and 6; (2) **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion in limine nos. 3 and 4; (3) **GRANTS** Plaintiff's Motion in Limine No. 1; and (4) **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff's Motion in Limine nos. 2 and 3.

## II.    DISCUSSION

### A.    Defendant's Motions in Limine

Defendant filed six motions in limine seeking to exclude the following items or types of evidence: (1) Plaintiff's evidence of attorney's fees; (2) Plaintiff's evidence of his traumatic brain injury; (3) evidence of Plaintiff's military career or other character evidence; (4) evidence and testimony regarding any obligation to pay undisputed sum; (5) evidence of communications or conduct underlying mediation; and (6) Plaintiff's Claim for punitive damages and exclude evidence of Defendant's financial condition.  *See* ECF No. 43.  Plaintiff opposed all motions.  ECF No. 57.  The Court **GRANTS** Defendant's motions in limine nos. 1, 2, 5, and 6 and **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's motion in limine nos. 3 and 4

### 1.    *Motion in Limine No. 1 to Exclude Plaintiff's Evidence of Attorney's Fees*

Defendant seeks to exclude "all evidence of attorney fees incurred by Plaintiff in this action."  ECF No. 43:13-14.  Defendant argues that even though the California Supreme Court has held that an insured may recover reasonable attorney's fees incurred to recover policy benefits that have not been paid, *see Brandt v. Super. Crt.*, 37 Cal. 3d 813, 817 (1985), Plaintiff should not recover his attorneys' fees because Defendant never denied

---

1008, 1030-31 (S.D. Cal. 2021) (Benitez, J.).  Plaintiff's complaint includes allegations against Does 1 through 50.  Naming doe defendants further implicates Rule 4 of the FRCP requiring service of the complaint.  All doe defendants are dismissed *without prejudice* for want of prosecution pursuant to FRCP 4(m) for the reasons outlined in *Rojas*.

coverage for his claim.  ECF No. 43 at 2:6-15.  In fact, Defendant points out that on September 30, 2017, it promptly paid Plaintiff the full arbitration award of $249,876.00, and on November 13, 2013, it paid Plaintiff his arbitration costs, totaling $8,008.30.  *Id.* at 3:15-17; ECF No. 27 7:22.  Thus, by the time Plaintiff filed suit on February 28, 2018, he had already been paid all benefits due under the Policy, so no attorney efforts were expended in obtaining any policy benefit.  *Id.* at 3:17-24.  Defendant also contends that even if Plaintiff had a valid *Brandt* claim, the Court should exclude any evidence he has of attorney's fees because Plaintiff failed to engage in discovery by objecting to Defendant's interrogatories and document requests seeking proof of Plaintiff's attorney's fees.  *Id.* at 2:23-3:4.  Plaintiff responds that the Court should deny Defendant's first motion in limine because it is based on an incorrect understanding of *Brandt* fees.  ECF No. 57 at 3:7. Plaintiff argues that whatever he paid his previous attorney "for having to go through arbitration when [Defendant] unreasonably withheld payment [of policy benefits]," including any increase in fees due to the case failing to resolve at the arbitration, qualify as *Brandt* fees.  *Id.* at 3:4-17.  He points out that Defendant appears to agree that Plaintiff could be entitled to damages incurred to procure his arbitration award but not in this action. *Id.* at 3:9-21 (citing ECF No. 43 at 4:25-28).  He also advises that he has no intention of introducing what he paid his attorneys in this action.  *Id.* at 3:23-28, 4:21-23.  Finally, as to the allegations of discovery abuse, Plaintiff admits that he refused to produce "evidence of what his fee arrangement is with his lawyers *in this lawsuit*," does not intend to produce such evidence, and agrees it is irrelevant.  *Id.* at 6:16-19.  However, he provides the Court with evidence that he did, in fact, comply with discovery requests related to his fee agreements with his attorney in the UIM arbitration.  *Id.* at 6:25-7:17.

Under *Brandt*, "[f]ees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable."  37 Cal. 3d at 819. Any amounts recoverable under the Policy should be litigated by virtue of a motion for attorney's fees and costs filed with the arbitrator if the Policy provided for such fees.  *See also* ECF No. 57 at 4:26-28 (agreeing that whether or not Plaintiff may recover fees

-3-

incurred in this case would be litigated by virtue of a motion for attorney's fees following his prevailing at trial).  The Policy provides that "[e]ach party will pay the expenses it incurs and bear the expenses of the arbitrator equally."  ECF No. 14-2 at 32.  This suggests that if attorney's qualify as expenses under the Policy, Plaintiff would not be entitled to them.  The Policy also does not indicate which arbitration rules, if any, apply or define "expenses" (*i.e.*, whether expenses include attorney's fees).

The Arbitration took place with Darrell A. Forgey of Judicate West.  *Id.* at 75. Forgey asked for any post-arbitration proceedings to be raised within ten days of his decision, or by October 14, 2017.  *See id.* at 79.  To the Court's knowledge, none were raised.  Further, Rule 13.B.4 of the Judicate West Arbitration Rules provides: "In appropriate cases, the award will identify the prevailing party or parties, if any, for purposes of … dealing with any issues of … attorneys fees," which "will usually be the subjects of supplemental proceedings."  *See* https://www.judicatewest.com/Resources/Arbitration Rules.[2]  Thus, according to the applicable arbitration rules, the issue of attorneys fees arising out of the arbitration should have been raised before Forgey, not this Court.  Thus, the Court finds fee evidence pertaining to what Plaintiff paid his attorneys in this case irrelevant for purposes of trial as it does not make a fact of consequence more or less probable, FED. R. EVID. 401, and may prove unduly prejudicial.

As to whether Plaintiff's fee evidence warrants exclusion due to his failure to comply with discovery, FRCP 26(a)(1)(A)(iii) requires all parties to provide each other with "a computation of each category of damages claimed by the disclosing party" along with "the documents or other evidentiary material . . . on which each computation is based."  Where

---

[2]    The Court takes judicial notice of Judicate West's Arbitration Rules.  *See* FED. R. EVID. 201(b)(1)-(2), (c)(1) (providing that at any stage of a proceeding, even *sua sponte*, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Chavarria v. Ralphs Grocer Co.*, 812 F. Supp. 2d 1079, 1089 n.8 (C.D. Cal. 2011)  (taking "judicial notice of AAA's Employment Arbitration Rules and Mediation Procedures").

-4-

1   a party fails to provide this information, that "party is not allowed to use that information
2   or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was
3   substantially justified or is harmless." FED. R. CIV. P. 37(a)(1).  "Rule 37(c)(1) gives teeth
4   to these requirements by forbidding the use at trial of any information required to be
5   disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers*
6   *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Here, Defendant has provided the
7   Court with discovery requests to Plaintiff, such as Defendant's Special Interrogatory No.
8   27, which asked, "If YOU contend YOU are entitled to attorney's fees from USAA GIC,
9   IDENTIFY each and every DOCUMENT which supports YOUR contention."  *See* Exhibit
10  4 to the Declaration of Brian Davis ("Davis Decl."), ECF No. 43-9 at 37; *see also* Exhibit
11  4 to Davis Decl., ECF No. 43-10 at 25 (asking Plaintiff to produce every document
12  referenced in his responses to Defendant's special interrogatories).  Plaintiff responded
13  with objections only, refusing to provide, identify, or produce documents evidencing his
14  entitlement to attorneys' fees.  *See* Davis Decl., ECF No. 43-9 at 37; *see also* Exhibit 4 to
15  Davis Decl., ECF No. 43-10 at 25.

16        In this case, the Court finds Plaintiff's evasive responses to discovery propounded
17  directly addressing this issue willful.  Plaintiff's opposition admits that the information was
18  withheld because he did not believe it to be relevant.  However, absent a claim of privilege,
19  which is inappropriate given Plaintiff produced the fee agreement pertaining to the UIM
20  arbitration but not any others, withholding information due to a self-determination of what
21  it relevant is inappropriate.  Thus, in addition to finding the attorney's fees related to fees
22  incurred in the UIM arbitration irrelevant, the Court also finds such fees warrant exclusion
23  under FRCP 37(a)(1) due to the Court's finding of willfulness.  Consequently, Defendant's
24  Motion in Limine No. 1 is **GRANTED**.

25        **2.**   ___Motion in Limine No. 2 to Exclude Plaintiff's Evidence of His___
26        ___Traumatic Brain Injury___

27        Defendant asks the Court to exclude any evidence that Plaintiff sustained a TBI as
28  that claim was already adjudicated in the underlying UIM claim and is subject to res

judicata and collateral estoppel.  ECF No. 34-1 at 2:2-5.  The Statement of Decision and Arbitration Award states, "I am unable to conclude that claimant sustained an actual TBI." Exhibit 6 to Davis Decl., Statement of Decision and Arbitration Award, ECF No. 43-12 at 5:23-24.  Plaintiff opposes by arguing that Defendant's motion in limine is overly broad because in order to prove his claims, he must prove Defendant acted unreasonably based on the information Defendant knew or should have known at the time.  ECF No. 57-1 at 2:2-10.  He contends that if the Court precluded him from presenting any evidence that Plaintiff sustained a TBI, he would be precluded from presenting any evidence of what Defendant knew—as that was in all of the communications to Defendant, thereby preventing him from proving whether Defendant's response to that information was reasonable.  *Id.* at 2:20-3:2.  Plaintiff also responds that he "has <u>no</u> intention of attempting to re-litigate whether he, *in fact*, suffered from a 'traumatic brain injury.'"  *Id.* at 3:23-24. In fact, he contends that "[w]hatever happened in the arbitration is irrelevant to liability." *Id.* at 4:22-23.

The doctrines of res judicata and collateral estoppel prevent parties from relitigating issues or disputes that have already been litigated and decided.  "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."  *Grondal v. United States*, --- F.4th ---, No. 20-35694, 2021 U.S. App. LEXIS 38563, at *54 (9th Cir. Dec. 30, 2021).  Meanwhile, "[i]ssue preclusion, or collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment."  *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 963 (9th Cir. 2020) (internal quotation marks and citations omitted).  However, both res judicata and collateral estoppel require a final judgment.  This is because the doctrines stem from 28 U.S.C. § 1738, which provides that "[t]he records and ***judicial proceedings of any court*** of any . . . state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." (Emphasis added).  However, "Section 1738 does not require that federal courts give res

-6-

judicata or collateral estoppel effect to an unconfirmed arbitration award, however, because arbitration is not a judicial proceeding." *Yin-Ching Houng v. Tatung Co. (In re Yin-Ching Houng)*, 499 B.R. 751, 760 (C.D. Cal. 2013) (citing *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 292 (1984)); *see also NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) (noting that "when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award")). Thus, because Plaintiff never confirmed the arbitration award, the Court does not agree that res judicata or collateral estoppel provide a basis for excluding evidence of Plaintiff's TBI. Nonetheless, the Court finds such evidence still has questionable relevance and must overcome the hearsay rule. *See, e.g.*, *Cerner Middle E. Ltd. v. Belbadi Enters. Ltd. Liab. Co.*, 939 F.3d 1009, 1015 (9th Cir. 2019) (a prior judgment is hearsay if offered to prove the truth of matters asserted in the judgment) (citing *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011)).

Here, evidence of Plaintiff's TBI does not tend to make a fact of consequence (*i.e.*, whether Defendant breached its duty of good faith and fair dealing or intentionally caused Plaintiff emotional distress) more or less probable. FED. R. EVID. 401. Defendant had a duty to act in good faith towards Plaintiff regardless of what Plaintiff's injuries were. Further, any probative value such evidence may have is substantially outweighed by a danger of unfairly prejudicing the jury in Plaintiff's favor, confusing the issues (*i.e.*, Plaintiff's TBI is not at issue in this lawsuit), misleading the jury, and wasting time. Plaintiff may present evidence that he was injured--even that he sustained injuries to his head, but he may not use or reference the term "traumatic brain injury." TBI is a clinical term that the Court finds would prove unduly prejudicial if presented at trial. Thus, Defendant's Motion in Limine No. 2 is **GRANTED**.

### 3. *Motion in Limine No. 3 to Exclude Evidence of Plaintiff's Military Career or Other Character Evidence*

Defendant also asks the Court to exclude evidence of Plaintiff's military career,

including awards received during his six years of service, as such evidence is (1) not relevant to his claims for breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress; (2) unduly prejudicial; and (3) at risk of wasting time and misleading the jury. ECF No. 43-2 at 2:6-11. Defendant contends that if Plaintiff is allowed to introduce such evidence, Defendant should be allowed to introduce Plaintiff's prior convictions for sexual abuse and molestation of a minor under the age of fourteen. *Id.* at 2:12-14. Finally, Defendant argues these convictions are relevant to Plaintiff's claim for emotional distress with respect to "how these stressors in his life compared to his claims of [Defendant]'s alleged delays in claim handling." *Id.* at 2:15-20. Plaintiff responds that he "has no intention of seeking to introduce any evidence of his military career or other character evidence." ECF No. 57-2 at 2:2-3. Thus, as Plaintiff notes, to the extent Defendant seeks to preclude such evidence, the parties agree it is not relevant. *Id.* at 2:3-4. Plaintiff also agrees that it is fair for the Court to allow Defendant to introduce evidence of Plaintiff's criminal history if Plaintiff opens the door by introducing character evidence of his own career. *Id.* at 2:10-14.

Considering the applicable law, the Court finds no reason to exclude Plaintiff's convictions to the extent Plaintiff opens the door to such impeachment evidence by introducing evidence of his good moral character. Thus, Defendant's Motion in Limine No. 3 is **GRANTED-IN-PART**. However, if Plaintiff does not introduce evidence of his good moral character, Defendant may not introduce evidence of his criminal convictions.

### 4.   *Motion in Limine No. 4 to Exclude Evidence and Testimony Regarding Any Obligation to Pay Undisputed Sum*

Defendant argues that the Court should exclude any evidence that Defendant was obligated to pay any "undisputed sum" prior to the actual UIM arbitration, unless or until a proper foundation is laid and any authority is provided. ECF No. 43-3 at 2:2-5. Defendant asks that in order for Plaintiff to introduce such evidence, "Plaintiff must first introduce either appropriate insurance expert testimony regarding the industry practice, or identification of any legal requirement that an undisputed sum be paid by an insurer prior

to a UIM arbitration." *Id.* at 2:5-8.  Plaintiff responds by arguing that California case law and California Code of Regulations, Title 10, § 2695.7(h) ("Section 2695.7") required Defendant to pay undisputed sums.  ECF No. 57-3 at 2:2-25.

In support of this motion, Defendant states that it deposed Plaintiff's UIM attorney on September 5, 2019, and during her deposition,[3] "Plaintiff's counsel … testified at length regarding her belief that [Defendant] had an obligation to advance Plaintiff the purportedly 'undisputed amount' which amounted to, in her view, [Defendant]'s last offer to resolve the UIM claim prior to the actual arbitration."  ECF No. 43-3 at 5:3-8 (citing Exhibit 11 to Davis Decl., Deposition of Vanessa Pena at 25:22-27:6, 28:4-30:5, 31:16-33:21, 35:8-38:19).  Defendant states that it anticipates Plaintiff will seek to offer such evidence that Defendant was obligated to pay him the "undisputed sum" (*i.e.*, whatever amount Defendant offered in a settlement offer) during the handling of his UIM claim.  *Id.* at 2:10-12 (stating that "[a]pparently, Plaintiff is under the misguided belief that an insurer's 'last offer' to resolve a UIM claim obligates an insurer to pay this sum").

Federal Rule of Evidence 901(a) requires a proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that the item is what the proponent claims it is."  *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir. 1987).  Such a foundation may be laid by testimony of a witness who has personal knowledge.  FED. R. EVID. 901(b)(1).  Thus, for Plaintiff to offer any testimony or evidence regarding such a practice, Plaintiff must offer evidence or testimony laying a foundation for such a practice from a witness with personal knowledge.  *See id.*  However, Defendant points out that while it has designated a claims handling expert to opine on insurance handling practices,

---

[3] As an initial matter, the Court points out that "[u[nder the advocate-witness rule, a lawyer cannot serve as an advocate in a trial in which the lawyer is likely to testify as a witness, unless an exception applies." *Legacy Villas at La Quinta Homeowners Ass'n v. Centex Homes*, 626 Fed. App'x 679, 682 (9th Cir. 2015) (citing Model Rules of Prof'l Conduct R. 3.7; Cal. R. of Prof. Conduct 3.7).  However, because Plaintiff was represented by Ms. Pena in the UIM claim but is represented by Lorrie and Justin Walker in this case, Plaintiff's current counsel would not serve as both an advocate and witness, meaning no violation of the rule arises.

Plaintiff has no such expert, and therefore, cannot lay the foundation for establishing any such practice of paying amounts offered.  *Id.* at 2:21-24.  Defendant also notes that "there is no case authority, Insurance Code, Insurance Regulation, or even industry standard that provides for such an obligation."  *Id.* at 2:19-21.  Rather, Plaintiff's basis for establishing such a practice is based on "[t]estimony from Plaintiff's underlying lawyer that she 'heard' of an undisputed sum being paid prior to a UIM arbitration, or that one insurance company … had such a practice," which "is insufficient for admission into evidence."  *Id.* at 2:25-3:1.

As stated, Plaintiff relies on Section 2695.7 for his argument that Defendant should have paid Plaintiff all amounts offered before the arbitration.  Section 2695.7(h) requires an insurer to promptly pay amounts of a partially accepted claim by providing as follows:

> **Upon acceptance of the claim** in whole or **in part** and, when necessary, **upon receipt of a properly executed release**, **every insurer** … **shall** immediately, but **in no event more than thirty (30) calendar days later**, tender payment or otherwise take action to perform its claim obligation.  **The amount of the claim to be tendered is the amount that has been <u>accepted</u> by the insurer** as specified in subsection 2695.7(b).[4]

Plaintiff's argument that Defendant was required to pay whatever it offered to Plaintiff as a settlement offer as an "undisputed sum" hinges on Defendant's settlement

---

[4]    Section 2695.7(b) provides as follows:

> **Upon receiving proof of claim**, **every insurer** … **shall** immediately, but **in no event more than forty (40) calendar days later**, **accept** or **deny the claim**, **in whole** or **in part**. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.
> (1) **Where an insurer denies** or rejects **a first party claim**, in whole or **in part, it shall do so in writing** and shall **provide to the claimant a statement listing all bases for such rejection** or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. …

Cal. Code Regs. tit. 10, § 2695.7 (emphasis added).

offer qualifying as a partial acceptance of Plaintiff's claim rather than a denial coupled with a settlement offer without accepting the claim.   Plaintiff contends that Defendant "attempted to extort a release from [Plaintiff] by refusing to pay him the 'fair value of the claims' (as valued by [Defendant]), *i.e.*, the amount ***accepted*** by [Defendant]."  ECF No. 57-3 at 4:1-3.  He contends that Defendant's statutory obligation to tender the amount it accepted is probative of whether Defendant acted unreasonably.  *Id.* at 5:6-12.

Plaintiff also relies on *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007) and *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209-10 (2009) for the proposition that defendant had a duty and obligation to pay Plaintiff any "undisputed amounts" promptly.  *See* ECF No. 57-3 at 2:18-25.  However, those cases merely discuss propositions of law that neither party disputes—such as an obligation to promptly pay accepted amounts—and do not create a requirement that an insurer tender "undisputed amounts" when it is unclear whether the insurer accepted the claim.  *See Jordan*, 148 Cal. App. 4th at 1072 (noting that "*an insurer cannot reasonably and in good faith deny payments to its insured without fully investigating the grounds for its denial*") (originally emphasis); *Major*, 169 Cal. App. 4th at 1209-10 ("If the insurer 'without proper cause' (i.e., unreasonably) refuses to timely pay what is due under the contract, its conduct is actionable as a tort.").  Here, it is unclear from the record whether Defendant's settlement offers qualified as a partial acceptance of Plaintiff's claims or a rejection accompanied by a settlement offer to allow the parties to resolve the matter.  That the offer was based on Defendant's belief that Plaintiff's symptoms were subjective in nature and may have been caused by a prior injury suggests the offer fell into the latter category.  SJ Order at 5:19-25.  Thus, Plaintiff will only be allowed to offer evidence that Defendant was required to pay undisputed amounts if he establishes Defendant partially accepted his claim.

In sum, the Court is not aware of any Insurance Code, Regulation, or practice that would require an insurance carrier to immediately pay portions of a claim it deems undisputed if it has not partially accepted the claim.  Plaintiff has not directed the Court to any such authority.  Further, the Policy itself does not seem to require such a practice.

1   Thus, Defendant's Motion in Limine No. 4 is **GRANTED-IN-PART**.  Plaintiff shall not

2   offer any evidence that Defendant was required to pay any disputed amounts before the

3   UIM arbitration unless Plaintiff lays a proper foundation for such a practice or policy.

4            **5.**      ***Motion in Limine No. 5 to Exclude Evidence of Communications or***
               ***Conduct Underlying Mediation***

5

6            Defendant argues the Court should exclude evidence, argument, or reference to

7   communications or conduct from Defendant, Plaintiff, or the parties counsel in anticipation

8   of and/or during the UIM mediation.  ECF No. 43-4 at 2:2-6.  Defendant "anticipates

9   Plaintiff will seek to offer evidence of settlement positions taken by [Defendant], and

10  statements made by its counsel, at an underlying UIM mediation for the purpose of

11  demonstrating [Defendant] delayed in paying policy benefits or otherwise acted

12  unreasonably in its investigation of Plaintiff's claim."  *Id.* at 2:8-12, 2:24-3:2.  Plaintiff

13  responds that the Court must allow him to introduce evidence of Defendant's settlement

14  offers in order to prove his claim for breach of the implied covenant of good faith and fair

15  dealing.  ECF No. 57-4 at 3:1-5.  He contends that contrary to Defendant's arguments, case

16  law indicates he may introduce evidence of Defendant's settlement offers.  *Id.* at 2:2-14.

17  He also argues that the California Legislature modified Section 1152 of the Evidence Code

18  in 1987 "to specifically allow settlement offers to be introduced in evidence at trial in a

19  case for breach of the implied covenant of good faith and fair dealing."  *Id.* at 2:16-3:4.

20           First, Defendant argues that California law prohibits such settlement

21  communications from being admitted as evidence, citing sections 1119, 1152, and 1154 of

22  the California Evidence Code.  However, "[t]he California Evidence Code does not apply

23  in this Court."  *See Compass Bank v. Petersen*, 886 F. Supp. 2d 1186, 1200 n.7 (C.D. Cal.

24  2012).  Thus, Plaintiff's arguments, which focus on the California Evidence Code and

25  California case law interpreting the California Evidence Code are inappropriate.  However,

26  Rule 408 of the Federal Rules of Evidence ("Rule 408") does apply.  That rule prohibits a

27  court from admitting evidence of either "offering … valuable consideration in …

28  attempting to compromise" a claim or "conduct or a statement made during compromise

-12-

negotiations about" a claim when offered "to prove or disprove the validity or amount of a dispute claim." FED. R. EVID. 408.

Thus, Defendant's Motion in Limine No. 5 is **GRANTED**. Plaintiff may not introduce evidence of Defendant's communications or conduct in anticipation of or during any mediations that took place in this case.

**6.** _**Motion in Limine No. 6 to Exclude Plaintiff's Claim for Punitive Damages and Exclude Evidence of Defendant's Financial Condition**_

Defendant asks the Court to preclude Plaintiff, his counsel, and/or any witnesses from introduction any evidence, argument, or reference to Defendant's financial condition at trial. ECF No. 43-5 at 2:6-9. In that vein, Defendant also asks the Court to bifurcate Plaintiff's claim for punitive damages to the extent the jury returns a verdict awarding Plaintiff actual damages and finding malice, fraud, or oppression. _Id._ at 2:4-6. Plaintiff advises that he does not oppose bifurcation of the trial with a second phase to determine the amount of punitive damages. ECF No. 57-5 at 2:3-4. He also contends that Defendant's attempt to seek to preclude Plaintiff from introducing evidence of Defendant's financial condition is overly broad because Defendant's "ability to pay for expert review of [Plaintiff]'s claim, including claims of brain injury, is directly probative of whether or not it acted unreasonably." _Id._ at 2:5-8. He states that Defendant's financial ability to thoroughly investigate his claim and its superior financial position to Plaintiff are both relevant as probative of Defendant's unreasonable conduct in this action. _Id._ at 2:21-23.

The Court agrees with Defendant that liability and punitive damages require different standards of proof, and judicial efficiency merits bifurcation so that if the jury finds punitive damages inappropriate, no time will have been wasted during trial presenting evidence relative to that issue. Thus, trial will be conducted in two phases: liability and punitive damages. If the jury finds punitive damages recoverable in the liability phase, trial on the amount of punitive damages will immediately occur.

Defendant's Motion in Limine No. 6 is **GRANTED**. Any evidence of Defendant's financial condition will be excluded during the first phase of the trial.

**B.    Plaintiff's Motions in Limine**

Plaintiff filed three motions in limine seeking to (1) exclude certain opinions from or of Defendant's Expert, David A. Reilly; (2) preclude Defendant from using information gained from hindsight or asserting the genuine dispute doctrine; and (3) preclude evidence of his criminal history.  *See* ECF Nos. 52, 53, 54.  Defendant has opposed all motions in limine.  *See* ECF No. 56.  As set forth below, the Court **GRANTS-IN-PART** Plaintiff's Motion in Limine No. 1 and **GRANTS-IN-PART** and **DENIES-IN- PART** Plaintiff's Motion in Limine Nos. 2 and 3.

### 1.    *Motion in Limine No. 1 to Exclude Opinions of Defendant's Expert, David A. Reilly*

Plaintiff moves to preclude testimony from Defendant's proposed expert, David A. Reilly, as irrelevant and based on speculation and incorrect statements of law applied to fact.  ECF No. 52 at 2:2-5.  Plaintiff seeks to exclude the following four opinions from Mr. Reilly: (1) his opinion that Plaintiff's attorney tried to set up a bad faith claim from the start because Defendant would not pay her limits demand; (2) his opinion that Defendant relied on experts to evaluate the nature of the head injury, and the arbitrator ultimately sided with those experts; (3) any opinion or testimony using the arbitrator's award as evidence that Defendant's pre-arbitration conduct was reasonable; and (4) his testimony as to what the law says, does not say, requires, and/or does not require.  *Id.* at 3:2-8.  Defendant responds that Plaintiff should not be allowed to limit testimony and evidence to the period preceding the arbitration because a bad faith claim must be viewed in light of the totality of the circumstances.  ECF No. 56 at 2:2-21.  Defendant contends that Mr. Reilly's "opinions are relevant, well-founded, and will aid the jury in its consideration and determination of the reasonableness of the claim handling."  *Id.* at 3:3-6.

Federal Rule of Evidence 702 establishes several requirements for admissibility of expert opinion evidence: (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge must assist the trier of fact either to understand the evidence or "determine a fact in issue"; (3) the testimony must be "based on sufficient facts and data";

1  (4) the testimony must be "the product of reliable principles and methods"; and (5) the

2  expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid.

3  702.

4      As outlined below, the Court **GRANTS-IN- PART** Motion in Limine No. 1.

5          a.   _Expert opinion that Plaintiff tried to set up a bad faith claim_

6      Plaintiff argues that any opinion regarding whether Plaintiff's attorney in the UIM

7  case, Ms. Pena, "tried to set up a bad faith claim" because Defendant would not pay benefits

8  under the policy is irrelevant.  ECF No. 52 at 5:20-24.  He also points out that the opinion

9  would confuse and mislead the jury (as he has different counsel in this case), be unduly

10 prejudicial, and is speculative.  _Id._ at 7:24-8:18.  Defendant responds that Ms. Pena's

11 behavior is relevant to this case because the effect of her actions pressured Defendant to

12 act in a certain way when handling the claim.  ECF No. 56 at 9:25-10:2.  Defendant also

13 points out that Ms. Pena has been designated as a testifying witness at trial, so Plaintiff's

14 counsel will have the opportunity to cross-examine her regarding whether she did, in fact,

15 try to set up a bad faith claim.  _Id._ at 10:3-8.

16     The Court agrees that the opinion of Plaintiff's counsel in the UIM arbitration or

17 intent behind her actions has no bearing on the issues in this case (_i.e._, whether Defendant

18 breached its duties to its insured).  Such testimony regarding Ms. Pena's intent is not only

19 speculative but also irrelevant and unduly prejudicial, and therefore, inadmissible.  FED. R.

20 EVID. 402, 403, 602.  Thus, the Court **GRANTS** Plaintiff's Motion in Limine No. 1 to the

21 extent it seeks to preclude testimony from Mr. Reilly that Ms. Pena tried to set up a bad

22 faith claim from the start because Defendant would not pay her limits demand.

23         b.   _Expert opinion that Defendant relied on experts to evaluate_
24              _Plaintiff's claim_

25     Plaintiff points out that at his deposition, Mr. Reilly testified about Defendant relying

26 on experts _during_ the arbitration proceedings.  ECF No. 52 at 9:17-18.  However, he argues

27 that because this case concerns only Defendant's conduct _before_ arbitration, such

28 testimony and reliance on expert opinions _after_ arbitration is irrelevant.  _Id._ at 9:18-23.

-15-

Notably, Defendant does not dispute that it was not in possession of the conclusions of retained medical experts at the time of its April and May 2016 settlement offers.  ECF No. 56-1 at 4:25-28.  However, Defendant responds that because the Court must consider the totality of the circumstances when evaluating Plaintiff's claim, it must consider Defendant's reliance on medical experts, the arbitrator's conclusion that Plaintiff did not suffer a TBI, and the arbitration award itself as all are directly relevant to the claims at issue in this case.  ECF No. 56 at 10:12-11:8

Defendant points out that Plaintiff relies on *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1155-56 (C.D. Cal. 2007) to argue that hindsight may not be applied, *see* ECF No. 52 at 2:13-22, but in *Maynard*, the court granted summary judgment in the defendant-insurer's favor, relying on post-offer arbitration evience, *see* ECF No. 56 at 4:9-22.  Indeed, the *Maynard* court noted that "Plaintiff's recovery in the arbitration was an astonishing $ 414,000 less than what he requested the difference between $ 500,000 in claimed damages and $ 86,000 in damages as determined by the arbitrator."  499 F. Supp. 2d at 1162.  It noted that the insurer "had a reasonable and legitimate basis for questioning the insured's claim, as the ultimate resolution of that claim by the arbitrator confirmed."  *Id.* at 1165.  Defendant also directs the Court to *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 976-77 (2003), where the California Court of Appeal expressly rejected the suggestion of another case "that any court opinion issued after the insurance company made its initial decision to deny coverage could not be considered in determining whether the decision was reasonable."  ECF No. 56 at 5:1-10.  Finally, Defendant points out that when ruling on summary judgment in this case, this Court relied on conduct after the settlement offers.  *Id.* at 5:22-28.

Defendant's reliance on medical expert opinions provided during this bad faith case or the arbitration proceeding is inappropriate.  Such opinions are not probative of whether Defendant's pre-arbitration evaluation of Plaintiff's claim breached the implied covenant of good faith and fair dealing.  Mr. Reilly may testify regarding whether Defendant's conduct in processing Plaintiff's claim was reasonable, but the Court **GRANTS** Plaintiff's

1   Motion in Limine No. 1 to the extent it seeks to preclude him from opining that Defendant's

2   retention of experts after the initiation of arbitration prove that Defendant's pre-suit claim

3   handling was reasonable.

4                   c.      *Expert opinion, expert testimony, or argument by counsel using*
5                           *the arbitrator's award as evidence that Defendant's pre-*
6                           *arbitration conduct was reasonable*

7           Plaintiff asks the Court to preclude testimony from Mr. Reilly or defense counsel

8   referencing the arbitration award as evidence that Defendant's pre-arbitration conduct was

9   reasonable.  ECF No. 52 at 14:8-13.  Defendant responds that Plaintiff "seeks to use the

10  arbitration award as both a shield and a sword—arguing it should be excluded while

11  simultaneously stating it is 'indeed relevant to this case."  ECF No. 56 at 6:18-20.  Finally,

12  Defendant reiterates that "[u]nder the subject insurance policy, no sums are owed until

13  either the parties agree, or the matter is decided through UIM arbitration."  *Id.* at 3:20-22

14  (citing ECF No. 52-1 at 29-32).  Thus, once Plaintiff demanded arbitration, Defendant's

15  contractual responsibilities required it to prepare for arbitration and make payment upon

16  issuance of the award, which it did.  *Id.* at 3:22-25. As a result, Defendant asserts its conduct

17  regarding the arbitration, arbitration award, and payment following arbitration are all

18  relevant to the case and the appropriate subject for Mr. Reilly's testimony.  *Id.* at 3:25-4:3.

19          To the extent the arbitrator's award "vindicates [Defendant's] actions," [Plaintiff]

20  believes it would confuse the jury; however, he agrees it is relevant to causation and

21  damages by showing what Plaintiff would have received had Defendant properly

22  investigated the claim and promptly paid the benefits owing.  ECF No. 52 at 3:3-6.  The

23  Court concludes the arbitrator's award, although not binding on this Court given it was not

24  confirmed, is relevant to this case and finds pre-trial exclusion inappropriate.  Thus,

25  Plaintiff's Motion in Limine No. 1 is **DENIED** to the extent it seeks to preclude the

26  arbitrator's award.  Further, because it is only post-arbitration proceedings that have limited

27  relevance, Mr. Reilly may discuss the award when appropriate, and the Court will evaluate

28  any objections to that testimony during trial.

-17-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d.      *Expert opinion on legal issues*

Plaintiff argues that based upon Mr. Reilly's report and deposition testimony, "it is apparent [Defendant] intends on using Mr. Reilly as a vessel to tell the jury what the law is and is not."  ECF No. 52 at 14:15-17.  Thus, Plaintiff seeks to preclude him from testifying as to what the law requires.  *Id.* at 15:6-10.  Defendant responds that it does not dispute that it would be inappropriate for an expert to instruct the jury on the law and assures it does not intend to proffer testimony from Mr. Reilly in this regard.  ECF No. 56 at 11:7-9.  However, Defendant argues that Mr. Reilly is allowed to inform the jury of industry standards based on his experience and knowledge as well as provide opinions on whether Defendant's conduct was reasonable based on that knowledge.  *Id.* at 11:12-16.

The Court **GRANTS-IN-PART** Plaintiff's Motion in Limine No. 1 to the extent it seeks to preclude Mr. Reilly from testifying as to the state of the law but **DENIES-IN-PART** the motion to the extent it sought to preclude Mr. Reilly from offering factual testimony based on legal assumptions and issues.

**2.      *Motion in Limine No. 2. To Preclude Defendant from Using Information Gained from Hindsight or Asserting the Genuine Dispute Doctrine***

Plaintiff moves to exclude any evidence and/or references to evidence related to information Defendant learned *after* its initial valuations/offers to Plaintiff of $75,000 (April 7, 2016) and $80,000 (May 12, 2016), including, but not limited to, Defendant's retained expert opinions during the subsequent arbitration and the specific findings of the Arbitrator.  ECF No. 53 at 2:9-13.  He also seeks an order precluding Defendant from asserting that a "genuine dispute" existed as to the value of Plaintiff's claim when it made these valuations/offers.  *Id.* at 2:13-15.  Defendant responds that its "conduct in the claim handling before, during[,] and after the UIM arbitration is directly relevant to [Plaintiff]'s claims and [Defendant]'s defenses."  ECF No. 56-1 at 3:4-6.  It also argues that exclusion of portions of its claim handling would be unduly prejudicial to Defendant.  *Id.* at 3:6-9.

Plaintiff argues that that he anticipates Defendant will attempt to introduce evidence and information it learned *after* its initial valuation of the UIM claim in an effort to prove

-18-

that it acted reasonably *before* making the valuations.  ECF No. 53 at 3:22-25.  Specifically, Defendant's expert witness, David Reilly, opined that Defendant had a "genuine dispute" as to the value of Plaintiff's claim because of the medical expert opinions obtained *during litigation of the UIM claim*, and because of the Arbitrator's ultimate decision on the claim. *Id.* at 3:24-28.  Mr. Reilly goes on to opine that "the actual outcome of the claim vindicated [Defendant]'s reluctance to accept the TBI claim at face value."  *Id.* at 4:1-3.  Further, Defendant's motion for summary judgment, trial report, and other documents state that Defendant could not have engaged in bad faith because the arbitrator was unable to conclude that Plaintiff sustained an "actual TBI."  *Id.* at 4:3-6.

Plaintiff contends that Defendant should be precluded from asserting the "genuine dispute" rule as a defense at trial in this case because there will be no evidence (*e.g.*, opinions from before the arbitration) to support its application.  ECF No. 53 at 6:10-11.  However, the Court cannot pre-determine that "there will be no evidence to support" the application of the genuine dispute doctrine at trial.  *Id.*  Thus, the motion is **DENIED-IN-PART**.  If Defendant can lay the foundation for the genuine dispute doctrine, then, Defendant can present the defense at trial.  However, Plaintiff also anticipates that Defendant "will attempt to introduce information it learned after its initial valuation [Plaintiff]'s claim—namely the opinions of its retained experts and the Arbitrator's ultimate finding that insufficient evidence existed of a TBI—to 'vindicate' its claims valuation decision at the onset."  *Id.* at 6:25-7:2.  As stated, the Court agrees that Defendant should not be able to rely on post-arbitration opinions or evidence it obtained after it made its decision regarding Plaintiff's claim.  Thus, Plaintiff's Motion in Limine No. 2 is **GRANTED-IN-PART**.  However, it is also **DENIED-IN-PART** to the extent Plaintiff seeks to preclude Defendant from asserting the genuine dispute defense at trial.

**3.**   ***Motion in Limine No. 3 to Preclude Evidence of His Criminal History***

Plaintiff moves to exclude any evidence, reference to, and/or argument relating to his criminal past including his November 1, 1995 plea to violating California Penal Code section 288(a) and 647.6, his January 5, 1996 criminal judgment, as well as any and all

arrests that may have been made of him.  ECF No. 54 at 2:2-13.  He contends this criminal history should be excluded as irrelevant and unduly prejudicial.  *Id.* at 2:5-8.  Defendant responds that Plaintiff's criminal history "is directly relevant to [Plaintiff]'s character evidence, and a comparative consideration of his claim for damages for intentional infliction of emotional distress."  ECF No. 56-2 at 2:2-6.

As set forth by the Court in its order on Defendant's Motion in Limine No. 3, the Court agrees such evidence is irrelevant unless Plaintiff opens the door by introducing evidence of good moral character.  Thus, absent Plaintiff opening the door to the introduction of such impeachment evidence, the Court **GRANTS-IN-PART** Plaintiff's motion excluding evidence of Plaintiff's criminal history as unduly prejudicial.

## III.  <u>CONCLUSION</u>

For the above reasons, the Court **ORDERS** as follows:

1.  Defendant's Motion in Limine No. 1 to exclude Plaintiff's evidence of attorney's fees is **GRANTED**.

2.  Defendant's Motion in Limine No. 2 to exclude Plaintiff's evidence of his TBI is **GRANTED**.

3.  Defendant's Motion in Limine No. 3 to exclude evidence of Plaintiff's military career or other character evidence is **GRANTED-IN-PART**.  Plaintiff may introduce evidence of his good moral character; however, if he opens the door to such evidence, Defendant can rebut that evidence with evidence of bad moral character, including Plaintiff's previous convictions.

4.  Defendant's Motion in Limine No. 4 to exclude evidence and testimony regarding any obligation to pay undisputed sum is **GRANTED-IN-PART** unless Plaintiff can lay the foundation for such a policy or requirement.

5.  Defendant's Motion in Limine No. 5 to exclude evidence of communications or conduct underlying mediation is **GRANTED**.

6.  Defendant's Motion in Limine No. 6 to exclude Plaintiff's Claim for punitive damages and exclude evidence of Defendant's financial condition is **GRANTED**.

7.     Plaintiff's Motion in Limine No. 1 is **GRANTED**.  Plaintiff may not present evidence of *Brandt* damages at trial.

8.     Plaintiff's Motion in Limine No. 2 is **GRANTED-IN-PART** to the extent it seeks to preclude Defendant from relying on information gained from hindsight but **DENIED-IN-PART** to the extent Plaintiff seeks to preclude Defendant from asserting the genuine dispute defense at trial.

9.     Plaintiff's Motion in Limine No. 3 is **GRANTED-IN-PART**.  Evidence of Plaintiff's criminal history will be excluded unless Plaintiff opens the door by introducing evidence of good moral character.

**IT IS SO ORDERED.**

DATED:     March 10, 2022

_____
**HON. LINDA LOPEZ**
United States District Judge